UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RONALD POOLE, individually, and on
behalf of a class of all others
similarly situated,

        Plaintiff,

vs.                            Case No. 3:06-cv-327-J-33MMH

PEOPLE'S CHOICE HOME LOAN, INC., a
foreign corporation, and THE WEEKS
APPRAISAL GROUP, INC., a Florida
corporation,

        Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Weeks' Motion to Compel Arbitration (Doc. # 14),[1] filed on April 18, 2006, as supplemented by Weeks' Memorandum in Support of its Motion to Compel Arbitration (Doc. # 49), filed on November 6, 2006. Poole filed a response (Doc. # 51) to Weeks' supplemental memorandum on November 15, 2006.

As noted, Weeks adopted co-defendant People's Choice's (PC) motion to compel arbitration. The Court denied without prejudice PC's motion to compel arbitration, pending the outcome of an evidentiary hearing to determine whether the signatures on the

---

[1] The Court permitted Weeks to adopt PC's motion to compel arbitration.

1

arbitration agreements were forged.  As Weeks adopted PC's motion to compel arbitration, the Court's denial of PC's motion and the rationale for that denial applies equally to Weeks' motion to compel arbitration.  The Court addresses the motion and the supplemental briefing solely to determine whether, if the Court finds that the signatures on the arbitration agreements are authentic, Weeks, as a non-signatory to the subject arbitration agreements, can compel arbitration of Poole's claims against it.  For the reasons stated below, the Court finds that Weeks can invoke the arbitration agreements.

**I. Background**

Poole's complaint includes counts against Weeks for violations of Florida's Deceptive and Unfair Trade Practices Act, unjust enrichment, unconscionability, and negligence. Poole's claims stem from four loan transactions, in which PC extended to Poole loans for the purchase of four houses.  Poole alleges, inter alia, that Weeks' appraisals and PC's loan procedures were negligent and deceptive.  In one portion of the complaint, Poole alleges:

> Defendants, and each of them, aided, abetted, encouraged, and rendered substantial assistance to the other Defendant in breaching their fiduciary obligations to Plaintiff and the class as alleged herein.  In taking action, as particularized herein, to aid, abet, and substantially assist the commissions of the wrongful acts and other wrong doings complained of, each Defendant acted with an awareness of its primary wrongful doing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongful doing of the other Defendant.

(Doc. # 2, at 8.)

PC and Weeks moved to compel arbitration based on the arbitration agreements signed in correlation with each house purchase. The four arbitration agreements are identical. Each provides that all disputes will be settled through arbitration. The arbitration agreements define "dispute" as follows:

> For purposes of this Agreement, a dispute is any claim or controversy of any nature whatsoever arising out of or in any way related to the Loan; the arranging of the Loan; any application inquiry or attempt to obtain the Loan; any Loan documents; the servicing of the Loan; or any other aspect of the Loan transaction. It includes, but is not limited to, federal or state contract, tort, statutory, regulatory, common law and equitable claims.

(Doc. # 14-6, at 2.)

Weeks, though not a signatory, seeks to invoke the arbitration agreements. Weeks argues that this case falls within two of the three exceptions recognized by the Eleventh Circuit that permit non-signatories to compel arbitration: the equitable estoppel and third-party beneficiary exceptions. Poole opposes Weeks' request, arguing that Weeks does not qualify for any of the non-signatory exceptions. The Court disagrees, finding that the equitable estoppel exception applies.

**II. Analysis**

To invoke arbitration, a party need not necessarily be a signatory to the arbitration agreement. MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999). In MS Dealer, the Eleventh Circuit identified three exceptions that permit

nonsignatories to compel arbitration: (1) equitable estoppel; (2) agency or related principles; and (3) third-party beneficiary. Id. Discussing the equitable estoppel exception, the Eleventh Circuit explained:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[] out of and relate[] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."

Id. (citations omitted) (brackets in original). Both grounds for equitable estoppel are present in this case. Paraphrasing the Eleventh Circuit in McBro Planning and Dev. Co. v. Triangle Elec. Constr. Co., the Court finds that:

> [T]he close relationship of the three entities here involved -- [Poole, PC, and Weeks] -- and the close relationship of the alleged wrongs to [Weeks'] contractual duties to perform [as appraiser], give one pause. This is not a simple tort case where, for example, Mr. [Weeks] might have committed a battery against Mr. [Poole] and there could be no question of the inappropriateness of arbitration arising from a clause in [an] unrelated [loan contract]. Moreover, it is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint

in tort rather than contract.

741 F.2d 342, 343-344 (11th Cir. 1984) (finding that equitable estoppel exception allowed a non-signatory to compel arbitration).

The Court also identifies the similarities between this case and <u>MS Dealer</u>. Though not identical, the facts are substantially similar. In <u>MS Dealer Serv. Corp. v. Franklin</u>, Franklin had purchased a car from Jim Burke Motors. Doing so, Franklin signed a Buyers Order, which contained a valid arbitration clause. The buyers order incorporated by reference a retail installment contract. The retail installment contract charged $990.00 for a service contract through MS Dealer. Franklin alleged, inter alia, that Burke and MS Dealer shared in excessive profits from the retail installment contract. MS Dealer, a non-signatory to either the buyers order or the retail installment contract, sought to compel arbitration. The Eleventh Circuit found that both circumstances giving rise to equitable estoppel were present. The Eleventh Circuit reasoned:

> [I]t is clear that Franklin's claims against Jim Burke and MS Dealer "are based on the same facts and are inherently inseparable." Franklin alleges that MS Dealer conspired with Jim Burke and Chrysler Credit Corporation (which, like MS Dealer, was not a signatory to the Buyers Order) to engage in a scheme to defraud her by charging her excessive amounts for the service contract and inducing her to incur needless debt and corresponding interest expenses in connection with her purchase of the car. It is important to note that Franklin's obligation to pay the $ 990.00 charge arose under the Buyers Order and that she specifically alleges that MS Dealer worked hand-in-hand with Jim Burke and Chrysler Credit Corporation in this alleged fraudulent scheme. Her

5

> "allegations of such pre-arranged, collusive behavior establish[] that [her] claims against [MS Dealer are] intimately founded in and intertwined with the obligations imposed by the [Buyers Order]."

Id. at 948 (citation omitted) (brackets in original).

Equally here, the Court finds both circumstances present. To some extent, the facts in this case are like those in MS Dealer, except in the house-buying context. Like MS Dealer, Weeks was not a signatory to the document mandating arbitration. Also as in MS Dealer, the disputed charges are included or referenced in a document with which the arbitration agreement was associated. In MS Dealer, the relevant document was the buyers order, in which the retail installment contract charging $990.00 was included. Here, it is the loan agreement, which required Poole to pay $300.00 for Weeks' appraisal. (Doc. # 14-2, at 35.) Like the claims in MS Dealer, Poole's claims against Weeks "'make[] reference to' or 'presume[] the existence of' the written agreement, the signatory's claims 'arise[] out of and relate[] directly to the [written] agreement,' and arbitration is appropriate." MS Dealer, 177 F.3d at 947 (first two alterations added) (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993)). Accordingly, the first circumstance giving rise to equitable estoppel is present.

In MS Dealer, the Eleventh Circuit found that Franklin's claims against Jim Burke (the signatory) and MS Dealer (the nonsignatory) were "inherently inseparable." MS Dealer, 177 F.3d

6

at 948. In that case, Franklin alleged that MS Dealer worked hand-in-hand with Jim Burke in a wrongful scheme. Id. Similarly, in this case, Poole has alleged that Weeks worked hand-in-hand with PC in a wrongful scheme. (See Doc. # 2, at 8; Doc. # 2, at 9-10.) Specifically, Poole has alleged that Weeks charged fees for services never performed or improperly performed, and that PC charged fees for reviewing those services. (Doc. # 2, at 9-10.) Finally, Poole has not charged Weeks in any count not also charging PC. Thus, it is clear that Poole's claims against PC and Weeks are inherently inseparable.

In short, as in MS Dealer, Poole's "'allegations of . . . pre-arranged, collusive behavior establish[] that [his] claims against [Weeks are] intimately founded in and intertwined with the obligations imposed by the [loan agreement].'" MS Dealer Serv. Corp. v. Franklin, 177 F.3d at 948 (quoting Boyd v. Homes of Legend, Inc., 981 F. Supp. 1423, 1433 (M.D. Ala. 1997)). Thus, the Court finds that the second circumstance giving rise to equitable estoppel, as noted in MS Dealer, is present. Based on these findings, and pending the outcome of the evidentiary hearing, Weeks may compel Poole to arbitrate his claims against Weeks. As the Court finds that the equitable estoppel exception allows Weeks to compel arbitration, the Court will not address Weeks' arguments that the third-party beneficiary exception also applies. For the foregoing reasons, the Court finds, pending the outcome of the

evidentiary hearing, that Weeks may be able to compel arbitration of Poole's claims against it.  That is, if the Court finds that Poole's signature on the arbitration agreement is genuine and if the Court permits PC to compel arbitration, Weeks may compel Poole to arbitrate his claims against Weeks.

Accordingly, it is now

**ORDERED**, **ADJUDGED** and **DECREED**:

Pending the outcome of the upcoming evidentiary hearing, Weeks may compel arbitration of Poole's claims against it.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 21st day of March 2007.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

8